McBRIDE, Judge.
This appeal was taken by the plaintiff from the judgment rendered in the court below dismissing his suit.
The suit is based upon a contract entered into by the parties on January 31, 1944, under which the defendant, Barber Laboratories, Iric., which'holds a license to engage in the profession of termite control and eradication, agreed to perform certain termite-proofing to the building owned and occupied by the plaintiff at No. 334 Bel-laire Drive,.for a consideration of $99.17.
This contract is in the standard form approved by the Louisiana Pest Control Commission ' (successor to . the Louisiana Horticultural Commission) in accordance with the Pest Control Act No. 124 of 1942, LSA-R.S. 40:1261 et seq. Under it the defendant undertook to treat plaintiff’s building and to eradicate all subterranean termites and all nonsubterranean termites in open construction therein for a period of two years. As an addendum to the original contract an additional agreement was entered into whereby defendant undertook to make annual inspections for a period of five years at an agreed price of $3 per year.
In his suit the plaintiff alleges that on April 7, 1949, the defendant wrote tp him stating that it had made the annual inspection of the premises and had given the treatment which the condition of the premises required, and that otherwise the premises were apparently in. good condition. It is further alleged that shortly after the receipt of the said letter plaintiff paid the inspection fees up to and including the year 1949, and thereafter discovered that his premises were seriously infested with termites which necessitated considerable expense for repairs and in eradicating the termites. The petition goes on to aver that under its agreement the defendant was obligated to do the work and that it refused to do so, notwithstanding that proper demand was made upon it, and as a result of defendant’s refusal to comply with its contract, plaintiff had to repair the property and have the termites eradicated, which entailed an expenditure of $369, for which amount he prays judgment.
The defendant first contends that the damage discovered in the latter part of 1949 was not covered by the contract for the reason that defendant’s liability, if any, under the contract and the addendum thereto, expired on January 31, 1946. Defendant’s counsel’s position is that the five year “additional” inspection service commenced to run from the date of the contract and expired with the inspection made in the early part of 1949.
We notice that the original contract contains these provisions:
“The Termite Contractor agrees to treát the building known as No. 334 Bellaire Drive, this City, and to eradicate all subterranean termites therein and all non-subterranean, termites in open construction therein, during a period of two years from date hereof, under the following terms and'conditions :
“Should any reinfestation occur in any portion of the building covered by this contract during its duration, the-Termite Contractor agrees to treat such-infested portions within 30 days of dis.covery of such reinfestation without additional charge to the owner.
* * * *
“The Termite Contractor' agrees to use first class materials and workmanship, and agrees to inspect the premises twice ' annually without charge during the next two years.”.
The addendum reads in part thus:
“In accordance .with Act 124 of 1942 we can now give you a two year guarantee which is protected by a $2,000 Fidelity . Bcmd. However^ w.e ‘ can offer. you an. addition^. Inspection Service Contract for 5 additional years where *646 by, upon the completion of this contract we will make one inspection each year.
* * * Our charge will 'be $3.00 per year. * * * ”
The plain wording of the original contract refutes counsel’s contention. The defendant obligated itself to make two annual inspections without charge and to treat any reinfestation occurring in any portion of the building during a period of two years from the date of the contract. The “additional Inspection Service Contract” extended for a period of five years and commenced “upon the completion” of the original contract. While the inspection mentioned in defendant’s letter of April 7, 1949 was actually, as the letter states, the “5th Annual Termite Inspection,” it was only the third inspection under the additional inspection service which defendant agreed to render for $3 per year.
On November 11, 1949 plaintiff made the discovery that the flooring under the bathroom and one of the floor joists had been damaged by termites. He communicated this information to defendant’s office, and thereupon defendant dispatched its pest control operator, a Mr. Strange, to plaintiff’s home to make an inspection. On the same day Strange went under the house with plaintiff and observed the damage. His finding was that there were some wet spots where the toilet pipes came through the floor, and he noticed that termites were “working” down a pier, which he “retreated.” He informed plaintiff that he. felt sure that the termites were living above ground and advised that a plumber be summoned to ascertain the cause of the moisture under the bathroom. Pursuant to Strange’s advice, plaintiff engaged the services of a plumber, who, on November 15, 1949, together with Strange and Mr. Pothier, found that there was a leak in a small cock on the toilet, which condition the plumber immediately remedied. Strange examined the entire house and declares that he only found termites on the one pier, and that their presence there was caused by the leak which had existed in the bathroom. He admits that the joist was infested and had been broken off, but he claims that he found no termites in the remainder of the joist.
On the same day that the leak in the plumbing was repaired, plaintiff made written demand upon defendant to repair the damage, but defendant, through its president and general manager, denied liability and refused to comply with the demand.
Plaintiff on January 2, 1950 entered into a contract to have the repairs made. The contract, which is in evidence, reflects that there not only was. work done to the joist supporting the bathroom and in replacing damaged sheathing, but a new sill was installed under the front-center of the building.
On January 28, 1950 plaintiff had his building “insulated against the attack of subterranean termites” for which he paid the Terminix Service Company $175, the job being performed by a Mr. Goff, its inspector.
Goff’s testimony is that prior to the confection of the contract he examined the building and found termites in three places traveling up and down some of the brick piers to reach the house. Their trails went up over the piers and disappeared into the sills from whence it was impossible to trace them.
Jack Edwards, the State Pest Control Inspector, at the request of defendant made an inspection some time after the repairs had been made, bút before the Terminix Service Company had re-insulated the building. He found one trail on a pier in the approximate vicinity of the bathroom, but he could not say if “they were trying to get entrance to the ground for moisture” or were “going from the ground into the house.”
Defendant insists that under the contract defendant was obligated only to eradicate subterranean termites and also nonsubterranean termites when in open construction, and that whereas the damage to the plaintiff’s premises was caused by non- *647 subterranean termites which were not in open construction, defendant cannot be cast for the damages claimed by plaintiff.
The three termite experts who gaye their testimony are in disagreement as to the type of termites which were found in the building on November 11, 1949. The State Pest Control Inspector, Edwards, could not say whether they were of that variety known as “subterranean,” but Goff, who insulated the premises for the Terminix Service Company testified positively that the condition was a “subterranean infection” and that he determined this fact by digging into the ground for several inches. Goff states further that he viewed the bad pieces of. lumber which had been removed from the building and “The material that was in the yard was badly eaten by subterranean termites.” Defendant’s inspector, Strange, states that the termites were located in the building and were “working” down to the ground, and we take it that the intimation is that they were not of the type known as subterranean.
All the experts agree that during the spring of the year termites .may- fly and swarm into a building, recolónize, and reproduce, and that such termites might exist in the building without traveling to the ground for moisture if they find water in the building itself. The defendant points up this testimony and advances the argument that the termites which caused plaintiff’s damage entered the building other than by way of the ground and obtained water by virtue of the leaky plumbing.
However, we think it makes no difference whether the damage was caused by subterranean or nonsubterranean termites. Under the contract the defendant undertook to eradicate not only subterranean termites, but nonsubterranean termites “in open construction.” No evidence in the record discloses just what is meant by the phrase “in open construction” and we have been unable to find any judicial interpretation of the phrase, or a definition thereof. It seems to us that the words “in open construction” mean “not secret”; “apparent”; “visible”; “patent”; “not concealed.” We have not the slightest doubt that the termites under the bathroom were found in what we believe to be open construction. Mr. Pothier discovered their presence when he went under his house on November 11, 1949 to make an electrical connection and the1' experts all saw evidence of the termites on the pier, and noticed the‘damage to the joist and subflooring of the bathroom which was clearly visible. We think that the termites, even if they can be classified as nonsubterranean, were in open construction and discoverable upon visual inspection.
Defendant also contends that the owner was not cooperative with the defendant during the life of the contract in that he failed to immediately eliminate the faulty plumbing, leakage, and dampness in . or under the area treated, as he was bound to do under the provisions of the contract. The argument then follows that the damage sustained was a result of plaintiff’s neglect to comply with his part of the bargain and that the damp or wet condition existing in the subflooring of the bathroom was the root of the difficulties experienced by him.
We do not think that it can be said that, plaintiff was noncoop.erative insofar as defendant’s undertaking was concerned. It is true that the bathroom leak was there, but plaintiff was ignorant of its existence until his discovery of it on November 11, 1949 when he immediately took steps to correct the condition.
We now pass to the chief contention of defendant which is that the contract and the addendum did not protect plaintiff against damage by termites because defendant’s only obligation was to make the yearly inspections and to re-treat the premises if conditions so warranted.
The petition in effect alleges that defendant was guilty of a failure of performance of its contract, and that as a result of such failure plaintiff is entitled to recover the amount of his damages. In the recent case of Melancon v. Mizell, 216 La. 711, 44 So.2d 826, the Supreme Court was concerned with a case which involved *648 the suit-.of ; a property owner against'the, surety of a termite eradicator for damages caused to the premises by a negligent non-; performance of- the eradication contract on the part of the contractor. In that case, after interpreting the contract (which incidentally is .in the same-form as ,that her fore-us) -and also the two year statutory performance bond furnished by the contrac-. tor, the Court arrived at the conclusion that since the plaintiff had alleged failure of performance, his petition stated a cause of action against, the defendant’s surety, and overruled the exceptions of no cause or. right of action which the surety had interposed. The Court went on to say - that the question respecting the kind and amount of damages the plaintiff was entitled to re- - cover was 'one which addressed itself to the merits of’ the case.
In the instant case if the damages had occurred during the two year coverage stipulated for by the contract, the defendant would be clearly liable, under the hold-. ing in the cited case, for the damages of which plaintiff complains.
But here we are not confronted with a suit based on the original contract. If plaintiff is to prevail, his right to recover must flow from the addendum" td the contract under which defendant undertook to render additional inspection services for five.years, and a solution of the case hinges upon an interpretation of just what was intended and understood by the parties when entering into the inspection service ¡agreement.
Defendant’s letter addressed to plaintiff on January 31, 1944, which is specifically referred to in the original contract, states in part as follows:
“In accordance with Act 124 of 1942 we can now give you a two year guarantee which is protected by a $2,000 Fidelity Bond. However, we can offer you- an additional Inspection Service Contract for 5 additional years where7. by, .upon the completion of this contract we will make one inspection each year. If. we find any. trace of termites while making these annual -inspections, we will treat without additional charge, and we will report our finding to you after each inspection. Our charge will be $3.00 per year. Upon completion of the contract we will gladly again extend the - service at the same charge. Only a ■ firm using a very permanent chemical like ‘Termicide’ could sign such a contract as this, and live up to it. Our 23 years in business and our financial worth denote emphatically that ‘it can be done.’ You might consider this Termite Insurance.”
The above-quoted language is convincing that- it was the defendant’s intention, to accord- plaintiff full protection against any damage caused by a recurrence of termites in his premises, and that plaintiff was led to so believe. The clear import is that the coverage which plaintiff had by virtue of the original contract was extended for an additional period of five years, however, without the benefit of the $2000 fidelity bond furnished by the contractor to the Louisiana Pest Control Commission. The defendant extolled the virtues, of its chemicals used -in eliminating and combating termites and led plaintiff to believe that because ’of the -use of such chemicals it could give to plaintiff protection against future infestation. According to the defendant “Termicide” was of such perma-nancy that there could not be a recurrence of the pests and- that plaintiff could “consider this Termite Insurance.”
If the ’chemical known as “Termicide” possessed such potent qualities and was of such permanency as defendant represented, there should not have been a reinfestation of plaintiff’s premises, and the fact that there was a recurrence of termites indicates to us that the defendant was either guilty of using an ineffective chemical preparation or of improperly treating plaintiff’s building.
We, therefore, conclude that there was a nonperformance of the contract on the part o,f defendant and that plaintiff is entitled to a recovery of his resultant damages which have, been adequately proven. He was *649 .forced to expend in repairing the property the sum of $172. In connection with making' the repairs it was. necessary that the workmen uproot and destroy a flower bed which was restored by a gardngr at a post of $16 and $6 was paid to a laborer. The Jilaintiff is also entitled to be reimbursed ■for the $175 expended fot the- services of the Terminix Service Company1 for properly insulating the property.-
Therefore, for the reasons assigned, the judgment appealed from is reversed, and it is now prdered that plaintiff have judgment against the defendant for the sum of $369 with legal interest from judicial demand and all costs of this suit.
Reversed. ■